**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CRIMINAL ACTION NO. 09-4-DLB**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

**VS.**             **MEMORANDUM OPINION AND ORDER**

**CARSON JAY CARTER**                                                          **DEFENDANT**

**IN RE: VERIFIED PETITION
OF CLAIMANT AUDREY GOODPASTER**

\* \* \* \* \* \* \*

## I. Introduction

On July 19, 2010, the Court convened an ancillary hearing regarding the verified petition of Claimant Audrey Goodpaster (Doc. # 53). During the hearing, four (4) witnesses were called to testify: Claimant Audrey Goodpaster, her husband James Goodpaster, KSP Detective Scott McIntosh, and Nancy Barker, the informant who made several controlled purchases of narcotics from Carson Carter at the Elliott County residence which is the subject of the verified petition. At the conclusion of the hearing, the verified petition was submitted for decision. For the reasons that follow, because claimant has sustained her burden of establishing that she was a bona fide purchaser for value who was without cause to believe that the subject property was subject to forfeiture, the preliminary judgment of forfeiture will be amended to reflect claimant's interest in the property as set forth herein.

1

## II. Factual Findings

Beginning in 2003, claimant and her husband began loaning money to her nephew, Carson Carter. At that time they were aware that he had previously been in trouble with drugs and was serving time for drug trafficking. The loans were designed, in part, to allow Carter to keep his child support obligations current while he was incarcerated. A handwritten ledger prepared contemporaneously by claimant and admitted at the ancillary hearing shows amounts loaned to Carter and amounts paid back by him on the various loans.

Upon his release from state custody in the fall, 2005, Carter lived with claimant and her husband in Winchester, Kentucky for several months. Because Carter was working in Lexington at the time, their residence in Winchester was close to his place of employment. During the time Carter was living with them they were unaware of any illegal activities with which he was involved. Carter eventually moved out of claimant's Winchester residence and began living with his parents in Elliott County on the weekends. After he moved out, claimant saw Carter around one time per month.

In approximately January, 2007, Carter lost his job in Lexington and began working for a backhoe company in Elliott County. Once he started that new job, Carter permanently moved back to Elliott County. Around that same time Carter began construction on the subject property which is at issue in this forfeiture proceeding. The house was to be constructed on an approximately one acre portion of a larger plot of land owned by Carter's father Burl Carter. The house was approximately seventy-five (75) miles from claimant's residence in Winchester. While the house was being constructed in 2007, neither claimant nor her husband saw anything to indicate that Carter had reverted back to his drug dealing

behavior. During the construction of the house, claimant and her husband continued to see Carter around once per month.

In October, 2007, Carter signed a written agreement to repay $78,000 debt owed to claimant and her husband by June 30, 2008 or, if the debt remained unpaid as of that date, to convey the subject property to Audrey Goodpaster. On October 30, 2007, Burl Carter deeded the parcel of land containing the subject property to Carter for $1.00. That deed was not recorded until August, 2008.

On four (4) separate occasions (October 23, 2007, November 16, 2007, December 6, 2007, and March 11, 2008), informant Nancy Barker purchased Oxycodone from Carter at the subject property. According to Barker, the property was under construction at the time of the controlled buys. Neither claimant nor her husband were present during any of the four (4) controlled buys and neither had any knowledge that the subject property was the location of the illegal drug sales.

In early January, 2008, Carter was arrested in Elliott County. On January 12, 2008, Carter was bonded out when Betty Moore[1] posted a $75,000 bond. Claimant and her husband did not become aware that Carter had been arrested for trafficking in January, 2008 until March, 2008. Because Carter was not indicted, they believed nothing ever came of those charges. In fact, they were advised that the charges had been dropped and they assumed that because he had not been indicted that Carter had done nothing wrong. Carter himself told claimant that the charges had been a mistake. There was no evidence elicited at the hearing which showed where within Elliott County the conduct giving rise to

---

[1] Although government counsel indicated that Carter's bonds were posted by family members, there is no evidence of record that Betty Moore is a relative of Carter.

3

those charges occurred. Claimant and her husband continued to see Carter throughout 2008 at the subject property and although he had been arrested and charged, those charges were eventually dropped. There is no evidence that leads the Court to conclude that claimant or her husband, or a reasonable person in their shoes, had or would have had any idea that Carter was dealing drugs from the subject residence under construction.

On April 8, 2008, while the subject residence was being constructed, the Elliott County PVA assessed the residence at $72,603. Although the record is silent as to how that figure was determined, the PVA records admitted during the ancillary hearing (Government Exhibit 7) reflect that underneath a photograph of the residence, there is a handwritten notation of "Carson Carter, 50%, 2008." From this notation and what looks to be the initials of "LM," the Elliott County PVA, the Court concludes that the PVA valued the property at 50% of its value in 2008. That valuation is corroborated in the notes section of that same exhibit where it reflects "assessed at 100% complete for year 2010. LM." The improvement value for the property for 2010 is $145,206, exactly double the assessed value in 2008.

In July, 2008, Carter was arrested in Rowan County. Neither claimant nor her husband were aware of that arrest at the time the subject property was transferred to them in August, 2008. In fact, they did not become aware of that Rowan County arrest until sometime in early 2009, when Carter was charged in the federal criminal case. On July 28, 2008, Carter was bonded out by his brother Adam Carter who posted a $40,000 cash bond. Half of the funds used by Adam Carter to post that bond came from his uncle Jim Goodpaster, claimant's husband. However, when Goodpaster loaned him that money, he was unaware it was being used to post Carson Carter's bond in Rowan County. Rather,

4

in late-June or early-July, 2008, Jim Goodpaster loaned him the money because Adam Carter's home had burned down and he needed money for a down payment for a mobile home.

Because Carson Carter's indebtedness to Audrey Goodpaster remained unpaid, on August 20, 2008, Carter conveyed the subject property to Audrey Goodpaster. In exchange for the conveyance of the subject property to Goodpaster, Carter had the remaining $78,000 in debt forgiven by Goodpaster and received $4,000 cash, for a total price of $82,000. The deed was recorded that same day.

Although no longer the owner of the subject property, Carter continued to live in the residence until his arrest in March, 2009. In exchange for Carter continuing to make renovations to the residence, claimant allowed him to live there for $200 per month. All of the renovations to the residence, either before the conveyance in August, 2008 or afterwards, were financed by either claimant or her husband.

### III. Analysis

Pursuant to 21 U.S.C. § 853(n)(6)(B), property cannot be forfeited if "the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." The bona fide purchaser exception in subsection (B) applies "where the petitioner acquired his legal interest after the acts giving rise to the forfeiture but did so in the context of a bona fide purchase for value and had no reason to believe that the property was subject to forfeiture." *United States v. Harris*, 246 F.3d 566, 574 (6th Cir. 2001) (*quoting United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991) (quoting S.Rep. No. 225, 98th Cong. 1st Sess. 208, reprinted in 1984 U.S.C.C.A.N. 3182, 3392)).

In determining whether claimant herein falls within the scope of § 853(n)(6)(B), the Sixth Circuit looks to the traditional definition of "bona fide purchaser." *United States v. Campos*, 859 F.2d 1233, 1238 (6th Cir. 1988). A bona fide purchaser is someone who has purchased property in good faith for valuable consideration without knowledge of the fraud or other deformity which may have preceded the purchase. Because the term "bona fide purchaser" is a legal term of art, the Sixth Circuit is unwilling to give the phrase an "unnatural meaning" for the purpose of subsection (n)(6)(B). *Id.*

The "bona fide purchaser for value" exception under § 853(n)(6)(B) has three elements: (1) the claimant has a legal interest in the forfeited property, (2) the interest was acquired as a bona fide purchaser for value, and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture. *United States v. Timley*, 507 F.3d 1125 (8th Cir. 2007) As such, "the only assets that are potentially immunized from forfeiture are those for which value has been given." *United States v. Brown*, 509 F. Supp. 2d 1239, 1245 (M.D. Fla. 2007).

In this case, claimant concedes that the subject property is subject to forfeiture by virtue of the multiple controlled purchases of narcotics from Carson Carter at the subject property. Government counsel also concedes that, by virtue of the August 20, 2008 deed transferring the subject property from Carson Carter to Audrey Goodpaster, claimant has a legal interest in the property. Accordingly, the first element is satisfied. Thus, the resolution of claimant's petition revolves around the Court's determination of whether claimant was a bona fide purchaser for value whose interest was acquired at a time when she was reasonably without cause to believe that the subject property was subject to forfeiture. Upon considering the evidence presented at the hearing and based on the facts

found herein, the Court answers both questions in the affirmative.

The August 20, 2008 transfer of the subject property from Carson Carter to claimant was a bona fide purchase for value. Although government counsel would have the Court conclude that the transfer was a sham designed to keep the property in the family, there is no credible evidence from which the Court could draw that conclusion. Having observed their demeanor during the ancillary hearing, the Court found claimant and her husband to be simple, yet credible witnesses, and definitely not the type of folks who are capable of carrying out the sham argued by government counsel.

At the time of the transfer, it is undisputed that the remaining debt owed by Carter to claimant was $78,000. That figure was supported by contemporaneous ledgers kept by claimant. The sales price of $82,000 was accepted by the PVA as fair value. When you subtract out the land value, the improvement value was assessed in April, 2008 at $72,603. Two years later, the same PVA assessed the improvements as 100% complete. The PVA records provide objective evidence that the amount paid for the subject property was reasonable.

With regard to whether claimant was, at the time she acquired the subject property, reasonably without cause to believe that the subject property was subject to forfeiture, the parties acknowledge that it is an objective standard. Although both claimant and her husband acknowledged they were aware of Carson Carter's prior conviction for trafficking in drugs in 2002 and his January, 2008 arrest in Elliott County for drug trafficking, there is no credible evidence in the record that a reasonable person would have concluded that the trafficking which gave rise to those 2008 charges occurred at the subject residence. Knowing that their property can be forfeited if they conduct their drug deals on site, drug

7

dealers routinely conduct their drug transactions elsewhere. Although the record establishes that Carter sold Oxycontin to the informant at the subject property on four separate occasions prior to the August, 2008 transfer, there is no credible evidence that a reasonable person would have reasonably drawn that conclusion. The fact that claimant and her husband were aware Carter had been arrested in January, 2008 in Elliott County for trafficking does not compel the conclusion that Carter was trafficking from the subject residence, thus making it subject to forfeiture.

The evidence regarding who posted Carter's bonds is a red herring in the Court's view. The Elliott County bond posted for Carson Carter was by Betty Moore in January, 2008. The evidence about the posting of the Rowan County bond by Adam Carter is also a red herring because neither claimant nor her husband were aware of that arrest until well after the property transfer. Although Adam Carter informed Agent McIntosh that $20,000 of the bond money came from Jim Goodpaster, Goodpaster provided a very credible explanation as to why he loaned Adam Carter that money.

### IV. Conclusion

For all of these reasons, the Court concludes that claimant has established by a preponderance of the evidence that the bona fide purchaser exception set forth in 21 U.S.C. § 853(n)(6)(B) applies. Accordingly,

**IT IS ORDERED** as follows:

1. The verified petition of Audrey Goodpaster (Doc. # 32-2) be, and is hereby **granted**;

2. The Preliminary Judgment of Forfeiture (Doc. # 20) be, and is hereby **amended** pursuant to 21 U.S.C. § 853(n)(6) to reflect the Court's determination herein. As a bona

8

fide purchaser for value whose interest was acquired at a time when claimant was reasonably without cause to believe that the property was subject to forfeiture, claimant is entitled to immediate possession of the subject property, that is –

**REAL PROPERTY**:

A certain tract or parcel of land lying and being in the County of Elliott, State of Kentucky, on Little Caney Creek; bounded as follows, to-wit:

BEGINNING on ridge at stake by Carl Mabry line; thence East course with Mabry line 225 feet to a stake; thence south course 255 feet to a stake; thence a West course 225 feet to a stake; thence North course 225 feet to the beginning stake.

Containing one (1) acre, more or less, however, same is hereby described and conveyed by boundary and no acreage.

The above description provided by Burl K. Carter and Josephine Carter.

Being the same property conveyed to Carson Carter by deed dated October 30, 2007, of record in Deed Book 106, Page 695; and conveyed to Audrey Goodpaster by deed dated August 20, 2008, of record in Deed Book 106, Page 698, all in the Elliott County Clerk's office.

This 15th day of September, 2010.

Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\ORDERS\AshCrim\2009\09-4 Memorandum Order re Goodpaster claim.wpd